***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence other than that proferred by the parties; rehear the parties or their representatives; or amend the Opinion and Award. However, certain modifications to the Deputy Commissioner's Opinion and Award are necessary because of later-admitted evidence. Accordingly, the Full Commission modifies and affirms the Opinion and Award of Deputy Commissioner Berger.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The parties to this action are subject to and bound by the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between the named employee and named employer.
4. The carrier liable on the risk is correctly named above.
5. The employee's average weekly wage is $544.40, resulting in a weekly compensation rate of $362.95.
6. An indexed set of records was marked as stipulated exhibit 1 and received into evidence.
7. Defendants admit that plaintiffs hand and arm problems are compensable, as well as her depression but deny that her costochondritis is compensable.
8. As of the time of the hearing before the Deputy Commissioner, the parties also agreed the employee would be paid the average of the ratings for her arms, under a Form 26.
 ***********
Based upon all of the competent, credible evidence in the record and reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was 41 years old and had been employed by Bassett Furniture for approximately 10 years. Prior to March 1997, plaintiff had engaged in hunting with a bow for about twelve years.
2. From 1991 until March of 1997, Bassett Furniture employed plaintiff as an upholsterer. Plaintiff worked eight to nine hours a day for a total of between forty and forty-five hours a week.
3. Plaintiff had to produce approximately 100 sofas a day. Plaintiff's main job was to upholster the back sections of sofas. Plaintiff's upholstery job required the repetitive use of her arms pulling over her head and across her chest. Plaintiff used her right arm to pull the upholstery in an across the chest motion in order to pull it tight and staple it down. This motion required the plaintiff to use her pectoralis major muscle. This muscle is attached directly to the breastbone adjacent to the costochondral joint. Repetitive use of this muscle can cause costochondritis in those people who are susceptible to this disabling condition. The fact that Dr. Steven Gold had never seen a case of costochondritis among the upholsterers he treated is not dispositive.
4. On or about March 5, 1997, plaintiff began to experience unbearable pain in both of her arms. She had been experiencing pain and numbness in her arms for approximately three or four months. On March 12, 1997, she began a course of treatment with Dr. Mark McGinnis.
In addition to the symptoms she was experiencing in her arms, she also complained about pain in her chest wall. A May 6, 1997 medical note reveals that plaintiff reported to Dr. McGinnis that she had been experiencing ongoing pain on the left side of her chest.
5. As a result of performing her job duties as an upholsterer, plaintiff has sustained costochondritis. Costochondritis is the inflammation of the costochondral joint where the rib joins the breastbone or the sternum. It is not an ordinary disease of life, like the common cold, to which the public is equally exposed to outside of the plaintiff's employment. The costochondritis was not caused by plaintiff's hobby of bow hunting. Hunting with a bow uses mostly the back muscles. Use of the chest muscles in pulling back a bow string is not forceful enough to cause costochondritis.
6. As a result of performing her job duties as an upholsterer for Bassett Furniture, plaintiff was placed at an increased risk in sustaining costochondritis as compared to the general public not so equally exposed.
7. As of March 31, 2000, plaintiff reached maximum medical improvement with regard to her costochondritis. Plaintiff's pain continues to persist even though she no longer performs the job duties of an upholsterer. As a result of her chronic costochondritis as well as her admitted compensable injuries to both of her arms, plaintiff is unable to return to her job as an upholsterer. The injury to plaintiff's costochondral joint is permanent.
8. Plaintiff is permanently restricted from doing repetitive work involving the use of her hands and arms. This restriction requires an individual review of job tasks by a medical expert to review whether the level of repetition in a particular job will result in an injurious exposure to the plaintiff. She is also restricted from doing work that involves stair climbing.
9. At the time of the hearing before the Deputy Commissioner, plaintiff was employed as a parts expediter earning wages comparable to the wages she was earning at the time that was originally disabled. However, this job was modified for plaintiff in a manner that it does not constitute a real job in the real economy and plaintiff's employment at such job does not provide evidence of her wage earning capacity.
10. On June 27, 2001, plaintiff reported to Dr. Davis continued difficulties at work, feeling harassed there. She was on significant limited capacity at work due to her physical problems, and described her co-workers, occupational nurse, and others as not honoring those limitations, as well as making it emotionally difficult. And she was complaining of a return of significant depressive symptoms; bad sleep, bad concentration, low energy, unable to enjoy things, feelings of guilt or worthlessness.
11. As a result of pain from her compensable injuries and occupational disease, plaintiff developed major depression resulting in her being written out of work by her treating psychiatrist. As a result, plaintiff is entitled to weekly compensation of $362.95 from November 27, 2001 until time as she is able to return to work at wages equal to or exceeding $544.40. Dr. Davis does not believe plaintiff could safely return to work at Bassett Furniture although he left open the possibility that she might someday be able to work somewhere else.
12. Plaintiff has not reached maximum medical improvement with respect to her compensable depression.
13. The costochondral joint is an important internal organ or part of the body for which no compensation is payable under any other subdivision of N.C. Gen. Stat. § 97-31(24).
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an occupational disease, costochondritis, which was due to causes and conditions characteristic of and peculiar to her employment with the defendant, which is not an ordinary disease of life to which the general public is not equally exposed to outside of this employment. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff remains unable to earn wages as a result of her costochondritis, her compensable arm injuries and resulting depression. N.C. Gen. Stat. § 97-29.
3. $5000.00 is equitable compensation for the permanent damage to plaintiff s costochondral joint in the left portion of her chest. N.C. Gen. Stat. § 97-31(24).
4. Plaintiff is entitled to have defendants provide all medical treatment arising from plaintiffs costochondritis, her compensable arm injuries and resulting depression to the extent such treatment tends or tended to effect a cure, give relief or lessen plaintiffs disability. Such treatment will likely be necessary for some time to come. N.C. Gen. Stat. § 97-25.
5. Plaintiff having been unable to earn wages because of her compensable depression from and after November 27, 2001, is entitled to compensation at the rate of $362.95 per week from November 27, 2001 until time as she is able to return to work at wages equal to or exceeding $544.40.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to the plaintiff permanent partial disability compensation in the amount of $5,000.00, pursuant to N.C. Gen. Stat. § 97-31(24), directly to the plaintiff subject to the attorney's fee approved below. Defendants shall pay 8% interest thereon from the date of the hearing before the Deputy Commissioner until paid.
2. Defendants shall pay for the medical expenses incurred or to be incurred for the treatment arising from plaintiffs costochondritis, her compensable arm injuries and resulting depression to the extent such treatment tends or tended to effect a cure, give relief or lessen plaintiffs disability. Such treatment will likely be necessary for some time to come.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 this Award is approved for plaintiffs counsel. Defendants shall pay $1,250.00 directly to plaintiffs counsel.
4. Subject to attorney fees hereafter described, defendants shall pay to plaintiff $362.95 per week from November 27, 2001 until plaintiff is able to find a job and return to work at wages equal to or greater than $544.40 per week or until further order of the Industrial Commission. Compensation due to the date of this opinion and award shall be paid in a lump sum, 75% thereof to plaintiff and 25% thereof directly to plaintiff's counsel. Thereafter, defendants shall pay weekly compensation to plaintiff with every fourth check being paid to plaintiff's attorney. Defendants shall pay interest on compensation at the rate of 8 percent per year from each weekly date due until paid.
5. Defendants shall pay the costs.
This 7th day of August 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN